# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| U.S. ENERGY DEVELOPMENT CORPORATION, | ) )  Civil Action No. 12-235 Erie |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| L.E. MALLORY, ET AL., LP., HENRY A. SATTERWHITE ROYALTY HOLDINGS, LLC AND HENRY A. SATTERWHITE ROYALTY HOLDINGS, LP, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Pending before the Court are the objections (ECF No. 53) to the Report and Recommendation ("R&R") issued on August 13, 2014, by Magistrate Judge Susan Paradise Baxter, filed by L.E. Mallory, et al., LP; Henry A. Satterwhite Royalty Holdings, LLC; and Henry A. Satterwhite Royalty Holdings, LP (collectively, "Defendants"). U.S. Energy Development Corporation ("U.S. Energy" or "Plaintiff") has filed a response in opposition to Defendants' objections (ECF No. 54), which are ripe for disposition.

## I.  Factual and Procedural Background

The R&R thoroughly sets forth the factual background, much of which is undisputed, and its recitation of the facts is incorporated herein by reference. *See* R&R at 4-7, ECF No. 52. Briefly stated, the parties entered into a lease in 2006 (the "USE lease"), which granted Plaintiff the rights to develop the "shallow" oil and gas deposits on property in McKean County, Pennsylvania, which is owned by Defendants (referred to by the parties as the "Acreage"). The

1

USE lease also granted Plaintiff a right of first refusal with respect to the "deep" oil and gas rights on the property:

> The Lessee shall have the right of first refusal to lease the horizons below the base of the Bradford Third Sandstone upon the terms and conditions of any bona fide written offer made for them. Said right to be exercised by notifying the Lessor by registered mail within ten (10) days of its receiving written notice that such bona fide offer has been made.

In April 2007, Defendants provided Plaintiff written notice of an offer from Atlas America, LLC ("Atlas") to lease the deep horizon rights. The next month, Plaintiff declined to exercise its right of first refusal, apparently because Plaintiff's president, Douglas Walch, felt that he had reached a tentative agreement with Atlas to jointly develop the deep horizons.[1]

In July 2007, Defendants and Atlas entered into a one-year lease that granted Atlas the rights to develop the deep horizons, with the option to renew the lease for additional years. The 2007 Atlas lease was never renewed. However, Defendants subsequently entered into two new leases with Atlas with respect to the deep horizons rights of certain portions of the Acreage. The first lease, in August 2009, covered only a small portion of the Acreage, while the second lease, in February 2010, covered practically all of the Acreage. It is undisputed that Defendants did not notify Plaintiff before having entered into either of these leases, as required by the right of first refusal clause in the USE lease.

In July 2011, Plaintiff notified Defendants that it believed they were in breach of the USE lease because they had failed to offer Plaintiff the right to lease the deep horizon rights before having entered into the leases with Atlas in 2009 and 2010. In response, representatives of

---

1. Douglas Walch, the president of U.S. Energy, testified that U.S. Energy declined to exercise its right of first refusal in 2007 because "we thought we had a deal struck with Atlas to participate in the deep rights, so we were going to be involved in those rights regardless." Walch Dep. at 36:13-16, ECF No. 41-7. The deal was never finalized, however. *Id.* at 36:19-23.

Defendants told Plaintiff to try to negotiate a deal with Atlas that it would allow the two entities to jointly exploit the rights, as it had attempted to do in 2007. Plaintiff did so. Atlas eventually responded that it would consider a "farm out" agreement, but at a significantly higher cost than that which had been in the leases between Defendants and Atlas, so the deal never came to fruition.

Plaintiff initiated this lawsuit by filing a Complaint on October 1, 2012, in which it alleged that Defendants breached the "agreement by entering into subsequent lease agreements with Atlas without offering U. S. Energy the Right of First Refusal required by the U. S. Energy Lease."[2] Compl. ¶ 23, ECF No. 1. On December 16, 2013, Defendants moved for summary judgment, arguing that the alleged breach did not cause any damages to Plaintiff and, as a result, Plaintiff failed to establish a prima facie breach of contract claim. Alternatively, Defendants argued that "the Court should grant partial summary judgment dismissing all claims for consequential damages and lost profits, since those theories of damages are subject to heightened standards of foreseeability and certainty." Def.'s Br. in Supp. of Mot. for Summ. J. at 3, ECF No. 38. On January 31, 2014, Plaintiff filed a cross-motion for partial summary judgment on the issue of liability, contending that Defendants breached the lease agreement by declining to extend the right of first refusal before it entered into the 2009 and 2010 Atlas leases, and the only issue remaining for trial is the amount of damages.

Magistrate Judge Baxter issued an R&R on August 13, 2014, in which she addressed both sides' motions. First, Magistrate Judge Baxter recommended that Plaintiff's motion for partial

---

2. The original Complaint named only L.E. Mallory et al., LP, and Henry Satterwhite Royalty Holdings, LLC, as Defendants. Compl. ¶ 2-3, ECF No. 1. On October 17, 2012, however, Plaintiff filed an Amended Complaint, in which it named Henry A. Satterwhite Royalty Holdings, LP, as a Defendant. Am. Compl. ¶ 4, ECF No. 4.

summary with regard to liability be granted. In reaching that conclusion, Magistrate Judge Baxter declined to look beyond the terms of the lease agreement to consider Defendants' arguments in support of their claim that the right of first refusal was not breached because it was a essentially a "one-time" right that expired after Plaintiff declined to match Atlas's 2007 offer. In Magistrate Judge Baxter's view, "[t]he Right of First Refusal (bargained for by these parties) is not limited by any other terms; instead, it clearly states U.S. Energy will be notified of '**any bona fide written offer**.'" R&R at 11, ECF No. 52 (emphasis in original). Thus, Magistrate Judge Baxter concluded, when Defendants admittedly failed to notify Plaintiff of the 2009 and 2010 offers by Atlas and give Plaintiff the right to lease the deep rights on those same terms, they breached the USE lease, irrespective of their subjective belief about what the USE lease did or did not require of them. *Id.* at 12. Second, reasoning that it would be inappropriate to grant summary judgment solely on the basis of Plaintiff's alleged inability to prove damages, she recommended that Defendants' motion be denied in its entirety. *Id.* at 12-13. However, even if Plaintiff could not prove compensatory damages, Magistrate Judge Baxter explained, Plaintiff would be entitled to recover nominal damages and, thus, Plaintiff should be permitted to file an Amended Complaint requesting such damages. *Id.* at 13. Magistrate Judge Baxter did not, however, specifically address Defendants' request for partial summary judgment as to Plaintiff's claim for damages for lost profits. These objections followed.

## II. Standard of Review

Whenever objections to a magistrate judge's R&R are filed, the district court must conduct a *de novo* review of the contested portion of the report (assuming, of course, that the objections are timely and specific). Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b); *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). In resolving the objections, the district court may: (1) accept,

reject, or modify, in whole or in part, the findings and recommendations of the magistrate judge; (2) receive further evidence; or (3) recommit the matter to the magistrate judge. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). Likewise, the Local Rules for the Western District of Pennsylvania require the district court to consider the objections to a magistrate judge's R&R and set aside any portion found to be clearly erroneous or contrary to law. LCvR 72.C.2.

### III. Discussion

Defendants have raised two objections to the R&R. First, they argue that Magistrate Judge Baxter failed to address their request for the entry of partial summary judgment with regard to Plaintiff's claim for consequential damages in the nature of lost profits. Reiterating the argument raised in their summary judgment briefs, Defendants contend that Plaintiff should be precluded from making a claim for lost profits for its anticipated re-leasing of the Acreage (which Defendants refer to as "flipping" damages) because such damages were not within the contemplation of the parties when the lease was formed. Second, Defendants contend that Magistrate Judge Baxter erred in recommending that Plaintiff's cross-motion be granted "for the reasons set forth in their Memorandum of Law in Support of Defendants' Motion for Summary Judgment [ECF No. 38], and in particular because the contract at issue contained a latent ambiguity that became evident after Plaintiff rejected a prior extension of the ROFR." Def.'s Objections at 2, ECF No. 53. These objections will be addressed *seriatim*.

#### A. Defendants' Motion for Summary Judgment/Partial Summary Judgment

The Court agrees with Defendants that Plaintiff has not adduced sufficient evidence upon which a jury could base an award of damages for anticipated lost profits from re-leasing the Acreage. Under Pennsylvania law, lost profits are recoverable as a form of consequential damages "if (1) 'there is . . . evidence to establish the damages with reasonable certainty,' (2) the

5

damages 'were the proximate consequence of the wrong' and (3) the damages 'were reasonably foreseeable'" at the time the contract was formed. *Brisbin v. Superior Valve Co.*, 398 F.3d 279, 289 (3d Cir. 2005) (quoting *Advent Systems Ltd. v. Unisys Corp.*, 925 F.2d 670, 680 (3d Cir. 1991)). Although "[p]roof of damages need not be mathematically precise . . . the evidence must establish the fact with a fair degree of probability." *Id.* at 680 (internal citations and quotation marks omitted). In other words, there must be enough evidence upon which a jury could reasonably base its decision; speculation will not suffice. *Id.*

As Defendants persuasively argue, there is no evidence that Plaintiff actually intended to "flip" the lease, let alone that Plaintiff had informed Defendants of its intent to do so. Nor is there any evidence that Plaintiff typically engaged in such practices, so that it would be reasonable to infer that Defendants should have been on notice that Plaintiff would likely be doing so with respect to the instant lease. Without such information having been provided to Defendants, it cannot be said that the alleged lost profits were reasonably foreseeable when the parties entered into the USE lease.[3] *See Primoff v. Warfield*, 495 F. App'x 293, 299 (4th Cir.

---

3. Plaintiff argues that the lease itself makes clear that "flipping" damages were within the contemplation of the parties when the lease was formed, since it expressly permitted Plaintiff to re-lease the Acreage. The fact that the lease permitted re-leasing does not, however, mean that Defendants had any specific reason to believe that Plaintiff would exercise its right to do so when the lease was signed. Suppose an individual enters into a contract to buy a house, but the deal eventually collapses. Obviously the house *could have been* sold to a third party sometime down the line had the deal closed. (In fact, it is quite likely that it would have been.). However, unless the buyer gave the seller some specific reason to know that it *actually intended* to sell the house in the future, or that it bought the house with the primary intent to turn around and sell it, the buyer would not be entitled to recover damages for lost profits for a hypothetical sale that no one – not even the buyer – anticipated would occur at the time the contract was formed. The same is true here. Possible or permissible does not equate to foreseeable. Plaintiff also argues that lost profit damages should have been foreseeable to Defendants because it is "the general business practice of the Lessors" to re-lease their properties. This argument is belied by the record, though. The evidence makes clear that the "general business practice of the Lessors" – by

6

2012) (citing *Hoang v. Hewitt Ave. Assocs., LLC*, 936 A.2d 915, 934 (Md. 2007)) (explaining that "collateral lost profits include the profits a buyer anticipated for reselling the land to another, had the breach not prevented the resale" and holding that such damages were not recoverable because plaintiffs "presented no evidence that they told the [defendants] that they intended to sell" the subject property).

Even if Plaintiff did intend to "flip" the lease and made that intention known to Defendants, Plaintiff has not adduced any evidence to establish the amount of its anticipated profits from the re-leasing of the Acreage with any degree of certainty. *Cf. id.* (explaining that plaintiff can establish certainty of collateral lost profits by introducing evidence regarding "the real estate market when they planned to sell, the likelihood that they would have found a buyer, a reasonably expected sale price, or the [plaintiffs'] track record and experience (or that of a similarly situated potential seller) in selling such property"). There is no evidence that Plaintiff had a prospective lessee of the rights and no evidence as to what the price per acre of any prospective re-lease would have been. Since there is no evidence upon which a jury could reasonably base an award of damages for lost profits, such an award would be purely speculative. Accordingly, Defendants' objections will be sustained, the R&R will be modified to reflect the foregoing analysis, and Plaintiff will be precluded from advancing a claim for lost profits.

On the other hand, however, the Court agrees with Plaintiff that it is too soon to determine, as a matter of law, whether Plaintiff is entitled to recover compensatory damages measured by the difference between the contract price (i.e, the price per acre paid by Atlas) and

---

which Plaintiffs presumably mean Defendants – was to develop its assets and to hold them, not to "flip" them.

7

the fair market value of the deep horizon rights at the time of the breach. Plaintiff has presented some evidence that the value of the deep rights at the time of the breach differed from the price per acre in the Atlas leases. In light of that evidence, it would be inappropriate for the Court to definitively decide that the difference is zero, as Defendants suggests. Rather, that issue must be decided by the finder of fact at trial, at which time Defendants will be able to re-raise their arguments with respect to Plaintiff's inability to prove that the fair market value at the time of the breach differed from the contract price.

### B. Plaintiff's Motion for Summary Judgment

The Court is not convinced that Magistrate Judge Baxter erred in granting Plaintiff's motion for partial summary judgment on liability. Magistrate Judge Baxter correctly set forth the applicable Pennsylvania law on contract interpretation. *See* R&R at 9-10, ECF No. 52. As Magistrate Judge Baxter explained, when the parties reduce their agreement to writing, it is presumed that their mutual intent can be determined with reference to the writing itself. *Samuel Rappaport Family P'ship v. Meridian Bank*, 657 A.2d 17, 21 (Pa. Super. Ct. 1995) (internal citations omitted). If, however, the writing is ambiguous, the finder of fact may resort to extrinsic evidence to determine the parties' intent. *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1424 (3d Cir. 1994). As a threshold matter, then, in interpreting a contract, the court must decide, as a matter of law, whether the language is clear or ambiguous. *Laufen Int'l, Inc. v. Larry J. Lint Floor & Wall Covering, Co., Inc.*, 2:10-cv-199, 2012 WL 1458209, at *4 (W.D. Pa. Apr. 27, 2012). A contract is ambiguous "if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995) (internal

quotations and citation omitted).

Magistrate Judge Baxter found that the right of first refusal in the USE lease was "clear on its face, so no ambiguity exists." R&R at 11, ECF No. 52. The Court agrees. The provision is not susceptible to any interpretation other than that ascribed to it by the Magistrate Judge. It means what it says: *any* bona fide offer triggered the right of first refusal. Had the parties intended to limit the right of first refusal to the first bona fide offer – i.e., to create what Defendants call a "one-time" right – they could have easily written the agreement in that manner. But they did not, and their failure to do so does not render the USE lease patently ambiguous, as Magistrate Judge Baxter correctly concluded.

Defendants contend that even if the USE lease is not patently ambiguous, Magistrate Judge Baxter improperly ignored their argument that a latent ambiguity exists. It is true that Magistrate Judge Baxter's R&R did not specifically address the latent ambiguity argument. In the end, however, that is immaterial because Defendants' argument is misguided inasmuch as there was no latent ambiguity for Magistrate Judge Baxter to discuss. "[A] latent ambiguity arises from extraneous or collateral facts which make the meaning of a written agreement uncertain although the language thereof, on its face, appears clear and unambiguous." *Duquesne Light*, 66 F.3d at 613–14 (internal quotations and citation omitted). A court can refer to extrinsic evidence to ascertain the existence of a latent ambiguity. *Id.* But "a claim of latent ambiguity must be based on a 'contractual hook': the proffered extrinsic evidence must support an alternative meaning of a specific term or terms contained in the contract, rather than simply support a general claim that the parties meant something other than what the contract says on its face." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 96 (3d Cir. 2001). The dispositive question is "whether the proffered extrinsic evidence is about the parties' objectively

manifested 'linguistic reference' regarding the terms of the contract, or is instead merely about their expectations." *Id.* at 94 n.3. "Put another way, a party offers the right type of extrinsic evidence for establishing latent ambiguity if the evidence can be used to support 'a reasonable alternative semantic reference' for specific terms contained in the contract." *Id.* (quoting *Mellon Bank v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1012 n.13 (3d Cir. 1980)).

For example, if a contract for the sale of goods says that the goods cost $10,000, the court would be permitted to look to extrinsic evidence to determine whether the parties meant "Canadian rather than American dollars." *Id.* (citing *Mellon Bank*, 619 F.2d at 1011 n.12. Evidence that the parties typically dealt in Canadian dollars, for instance, would be admissible to support one of the two possible readings of the price term. Or suppose that a contract states that a certain quantity of cotton will be arriving on a ship named "Peerless" sailing from Bombay, as was the case in the classic case of *Raffles v. Wichelhaus*, 1864 WL 6161 (K.B. 1864). Unbeknownst to the parties, though, there are two ships by that name sailing at the same time. That fact renders the contract latently ambiguous and extrinsic evidence – perhaps evidence that the parties had always utilized one shipping company in their prior dealings – would thus be admissible to determine which ship the parties were referencing when the contract was formed.

Unlike in those examples, Defendants have not established any extrinsic evidence to suggest that the phrase "any bona fide written offer" actually meant that only the first "bona fide written offer" triggered the right of first refusal or that the right of first refusal would be waived *ex ante* by Plaintiff's decision to decline to exercise the right when intially extended or any other interpretation that would have relieved Defendants of the obligation to notify Plaintiff before entering into the subsequent Atlas leases. All of the so-called evidence upon which Defendants rely at most explains why they did not believe they had to provide notice to Plaintiff of the 2009

10

and 2010 offers by Atlas. That is, it seeks to explain their expectations about that which the USE lease required of them.[4] It does not in any way suggest that the parties meant something other than that which is set forth in writing in the USE lease at the time it was formed.

Because the USE lease is both patently and latently unambiguous, and it is undisputed that Defendants did not extend the right of first refusal to Plaintiff before having entered into the 2009 and 2010 Atlas leases, Defendants are liable for breach of contract. Accordingly, the Court agrees with Magistrate Judge Baxter's recommendation that summary judgment should be granted to Plaintiff on the issue of liability, and that portion of her R&R will be accepted as the opinion of the Court.

## IV. Conclusion

For the reasons set forth above, the Court will sustain Defendants' objections insofar as they relate to the lost profits issue, but the objections will be overruled in all other respects. Accordingly, summary judgment will be entered in favor of Plaintiff on the issue of liability. An appropriate Order follows.

McVerry, J.

---

4. Defendants assert that the following evidence supports their argument that the USE lease's right of first refusal provision is latently ambiguous:

> (1) Plaintiff's admission that it was properly offered, and declined to exercise, the ROFR in 2007 when Atlas Energy first offered to lease the "deep rights" on the Acreage; (2) The multiple occasions on which Plaintiff indicated to Defendants that it was not interested in the deep rights on the Acreage; (3) Plaintiff's ongoing relationship with Atlas Energy; and (4) Defendants' adding of the ROFR clause to the USE Lease without discussion, such that the terms of the provision should be construed against the drafter.

Def.'s Objections at 9-10, ECF No. 53.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **U.S. ENERGY DEVELOPMENT CORPORATION**, | ) ) ) | Civil Action No. 12-235 Erie |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| **L.E. MALLORY, ET AL., LP., HENRY A. SATTERWHITE ROYALTY HOLDINGS, LLC AND HENRY A. SATTERWHITE ROYALTY HOLDINGS, LP,** | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER OF COURT

AND NOW, this 17th day of September, 2014, for the reasons set forth in the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the Objections to the Report and Recommendation issued on August 12, 2014 by Magistrate Judge Susan Paradise Baxter filed by filed by L.E. Mallory, et al., LP, Henry A. Satterwhite Royalty Holdings, LLC, and Henry A. Satterwhite Royalty Holdings, LP (collectively, "Defendants") are **SUSTAINED IN PART**, insofar as they relate to the lost profits issue, and **OVERRULED IN ALL OTHER RESPECTS**. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 37) is **GRANTED IN PART** and **DENIED IN PART**, to wit: Plaintiff is precluded from seeking recovery of consequential lost profits damages. U.S. ENERGY DEVELOPMENT CORPORATOINS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT on the issue of liability is **GRANTED**.

**IT IS FURTHER ORDERED** that the Report and Recommendation dated August 13,

2014 (ECF No. 52) is **ADOPTED** as the opinion of the Court except as modified herein.

By the Court:

s/Terrence F. McVerry
Senior United States District Judge

cc: Counsel of Record
(Via CM/ECF)